THE STATE EX REL. MICHAEL J. MULVOY v. VICTOR J. MILLER, LOUIS NOLTE AND WALTER J. G. NEUN, AS BOARD OF ESTIMATE AND APPORTIONMENT OF CITY OF ST. LOUIS.

Court en Banc, June 15, 1926.

1. **MANDAMUS: Right to Writ: Employee of City: Salary: Employment for Succeeding Year.** The right of an employee in the fire department of the city to maintain a mandamus to compel the Board of Estimates and Apportionments to include in its bill to the Board of Aldermen an appropriation to pay the salary designated by ordinance as the amount of his compensation, does not depend upon his lawful right to re1ain in the employ of the city during the year next ensuing after the appropriation becomes effective. If his employment should cease his pay would likewise cease, but his right to have the bill correctly state and recommend his monthly compensation as fixed by ordinance does not depend upon the continuance of his employment after the appropriation becomes effective.

2. **ORDINANCE: Initiative Petition: Permissive Deliberation: Premature Submission.** Where the charter provided that an ordinance may be enacted by the initiative process, and required the Board of Election Commis; ' _ers forthwith to certify the petition, if found to be sufficient, to the Board of Aldermen, a provision in the charter that if the ordinance is not adopted by

the aldermen and approved by the mayor, or adopted over his veto, within sixty days after the next meeting after such certification, or if within fifteen days after the expiration of said sixty days the committee of petitioners shall not state in writing to the clerk that there is no necessity for submitting the ordinance to the voters, the clerk of the Board of Aldermen shall forthwith certify the failure to adopt the same to the Board of Election Commissioners, who shall submit the ordinance to the voters at the first election not less than thirty days after such certification, is only permissive as to the sixty days and fifteen days in which the Board of Aldermen may consider the ordinance after it is certified to them, and a submission of the ordinance to the voters before the expiration of said time does not affect its validity, if it is adopted by the requisite number of voters. During the time the aldermen were free to act, but the provision neither commands the aldermen to act, nor prohibits the submission of the ordinance to the voters within such time.

3. ———: **Enactment by Initiative Petition: Increase of Salary: Recommendation by Board of Estimates: Appropriation.** An ordinance of the city of St. Louis, enacted by initiative petition, increasing the salary of a private employee in a classified service of the fire department, but not specifying the number of such employees, is not an appropriation ordinance, and if adopted by the voters is not invalid under the charter because it was not recommended by the Board of Estimates and Apportionments.

4. ———: **Enactment by Initiative Process.** An ordinance increasing or fixing the compensation to be paid to classified employees in the fire department of the city of St. Louis can be enacted through the initiative process by the legal voters. The provision of the charter declaring that the people shall have power, at their option, to propose ordinances and adopt them at the polls, with the same effect as if adopted by the Board of Aldermen and approved by the Mayor, is in **pari materia** with the other provision declaring that "the legislative power shall, subject to the limitations of this charter, be vested in a board of aldermen" and with the other provision declaring that "the Board of Aldermen shall have power by ordinance not inconsistent with this charter to exercise all the powers of the city," and all these provisions must be read together and so construed that each will be given force and effect. The Board of Aldermen does not alone have power to fix the salaries of city employees, but such an ordinance comes within the intendment of the initiative provision of the charter.

5. ———: **Invalidity: Excessive Tax: Constitutional Maximum.** Assuming that the appropriation bill submitted by the Board of Estimates to the Board of Aldermen contains "the amounts deemed necessary for the use of each department, including salaries for the actual number of employees in each," and that the tax rate for the curr t year will exceed the constitutional limit, those facts do not render unreasonable, oppressive or void an ordinance enacted by initiative petition increasing the salaries of a class of employees in the fire department. Such ordinance is on the same footing with all other ordinances upon which amounts to be appropriated are to be computed.

6. ———: **Appropriation to Pay Salaries: Amount Fixed by Board.** The Board of Estimates of the city of St. Louis cannot assume that an ordinance increasing the salaries of a class of city employees is void, and itself fix the salaries to be paid to such employees at the same amount at which they were fixed by the preceding ordinance.

---

Corpus Juris-Cyc. References: **Mandamus,** 38 C. J., Section 390, p. 759, n. 91 New. **Municipal Corporations,** 28 Cyc., p. 352, n. 48 New; p. 552, n. 80; p. 1565, n. 22 New; p. 1667, n. 62 New. **Statutes,** 36 Cyc., p. 1147, n. 30.

Mandamus.

PEREMPTORY WRIT AWARDED.

*Alroy S. Phillips* for relator.

(1)  The provisions of the city charter requiring an ordinance proposed by initiative petition to be submitted to a vote of the people, unless the ordinance is adopted by the aldermen within sixty days after the petition is certified to them as sufficient, or unless the committee of the petitioners withdraw the ordinance within fifteen days, thereafter, are substantially complied with if the alderman finally reject the ordinance in three days, and two days thereafter the committee finally refuse to withdraw it.  Charter, Art. V, sec. 4; State ex rel. v. Pratt, 92 Kan. 247.  (a)  The object of such provisions is to prevent delay and obtain quick action, and if the aldermen and committee act before the times limited they further the purpose of the law.  (b)  Where the aldermen and committee finally act on the ordinance before the full time allowed them, for the purpose of saving the city the expense of a special election, the city officials are estopped from urging the invalidity of the submission of the ordinance at a general city election.  (c)  Where in so doing the aldermen and committee followed a previous administrative construction of the charter, such construction is entitled to consideration.  Ross v. Railroad, 111 Mo. 18; Folk v. St. Louis, 250 Mo. 116.  (d)  The time allowed the aldermen and the committee of the petitioners is for their benefit and may be waived by them.  State ex rel. v. Spencer, 164 Mo. 48; Davison v. Hough, 165 Mo. 561; Ex parte Alexander, 163 Mo. App. 615.  (2)  Under Section 25 of Article IV of the charter, which requires the Board of Estimate and Apportionment to recommend or join in recommending ordinances contemplating or involving the payment of any money, an ordinance fixing the salaries of members of the fire department does not contemplate or involve the payment of money.  Charter, Art. VIII, sec. 7; Charter, Art. XVI, secs. 1 to 8; St. Louis v. Bruere, 225 S. W. 110.  (a)  Preliminary ordinances authorizing city officials to incur obligations are not ordinances involving the payment of money.  Authorities supra.  (b) The recommendation of the Board of Estimate and Apportionment is only required to ordinances in the nature of appropriation ordinances. Authorities supra.  (c)  An ordinance fixing salaries, like a condemnation ordinance, does not involve the payment of money, because it is only preliminary and does not involve the payment of money until the city officials act upon it, and the payment of money is only involved in an ordinance appropriating money to pay the obligation thus incurred.  Authorities supra; Mo. Constitution, Art. II, sec.

21; City of Tarkio v. Clark, 186 Mo. 285; St. Louis v. Railway, 211 S. W. 671. (3) The power of the people of St. Louis to enact ordinances by the initiative given in Article V of the city charter is not subject to the provisions of Section 25 of Article IV of the chapter requiring all ordinances involving the payment of money to be recommended by the Board of Estimate and Apportionment. (a) Because Section 25 of Article IV of the charter relates only to ordinances enacted by the Board of Aldermen. Charter, Art. IV, Secs. 1 to 26. (b) Because the powers of the Board of Estimate and Apportionment relate only to their duties with respect to the Board of Aldermen. Chapter, Art. XVI, secs. 1 to 8. (c) Because in Article XVI, relating to the powers of the Board of Estimate and Apportionment, there is no mention of any power with respect to the initiative. Charter, Art. XVI, secs. 1 to 8. (d) Because in Article V of the charter, relating to the initiative, there is no express mention of any power in the Board of Estimate and Apportionment with respect to the initiative. Charter, Art. V, secs. 1 to 6; State v. Kline, 50 Ore. 426; State ex rel. Lashly v. Becker, 290 Mo. 560. (e) Because the purpose of the initiative is that the people may themselves enact ordinances which their lawmakers fail to enact, and such power in the Board of Estimate and Apportionment would nullify that purpose. State ex rel. Lashly v. Becker, 290 Mo. 560; Pitman v. Drabelle, 267 Mo. 78; 36 Cyc. 1110. (f) Because the power given to the Board of Estimate and Apportionment by Section 25 of Article IV of the charter is in derogation of the sovereignty of the people and is to be strictly construed in favor of the people. Mo. Constitution, Art. IX, secs. 20-25; 36 Cyc. 1177. (g) Because Section 1 of Article V of the charter shows an intention that the ordinances adopted by the people shall have full effect. (h) Because the correct construction of that part of Section 1 of Article V of the charter which provides that the initiative power shall be exercised subject to the provisions of the charter is that the people cannot enact ordinances contravening certain fundamental reservations which the people in their charter have withdrawn from all legislative action. Charter, Art. 1, sec. 1, par. 16; Charter, Art. VII, sec. 1, State ex rel. Lashly v. Becker, 290 Mo. 560; State ex rel. Halliburton v. Roach, 230 Mo. 408. (4) Mandamus is a proper remedy to compel the Board of Estimate and Apportionment to take account of an ordinance fixing a salary and to provide for such salary in an appropriation bill. Charter, Art. XVI, sec. 3; State ex rel. v. Mayor, 58 Mo. App. 124; People ex rel. v. Hylan, 199 App. Div. (N. Y.) 218, affirmed 232 N. Y. 601; State ex rel. v. State Board of Health, 103 Mo. 22; State ex rel. v. Adcock, 206 Mo. 550.

*Oliver Senti* for respondents; *Conway Elder* of counsel.

(1)   Mandamus is not the proper remedy, for the reason that relator's petition shows that his salary is fixed by ordinance on a monthly basis; relator nowhere alleges that he has any lawful right to remain in the employ of the city during the year next ensuing from the time at which the appropriation becomes effective, yet he seeks to mandamus the Board of Estimate and Apportionment to appropriate a salary for the entire year.   (2)   The ordinance submitted at the election on April 7, 1925, was not lawfully adopted and is invalid: (a) The failure and refusal of the Board of Aldermen to adopt the same were certified to the Board of Election Commissioners before the expiration of sixty days after the sufficiency of the initiative petition, proposing the ordinance, had been certified to the Board of Aldermen by the Board of Election Commissioners, in violation of Section 4 of Article V of the charter.   (a)   The proposed ordinance, as certified to the Board of Aldermen by the Board of Election Commissioners, was not permitted to remain with the Board of Aldermen for fifteen days after the expiration of the said sixty days above mentioned, as is required by Section 4 of Article V of the charter. These provisions are mandatory in their nature and must be strictly complied with.   2 Dillon on Municipal Corps., (5 Ed.) sec. 576; Town of Danville v. Shelton, 76 Va. 325; Campbell v. Cincinnati, 49 Ohio St. 463; Carpenter v. Yeadon Borough, 208 Pa. St. 396; Herman v. City of Oconto, 100 Wis. 391; Swindell v. State ex rel. Maxey, 143 Ind. 153; McCoy v. Briant, 53 Cal. 247; State v. Town of Bergen, 33 N. J. L. 39.   (b)   Any certification of refusal to adopt, made by the clerk of the Board of Aldermen prior to the expiration of seventy-five days after the proposed ordinance had been certified to the Board by the Election Commissioners, was therefore premature and rendered the adoption of the ordinance at the ensuing election void.   (c)   The object of the provisions of Section 4, Article V, of the charter, is not ''to prevent delay and obtain quick action,'' but is to insure deliberation and prevent hasty, inconsiderate action. Town of Danville v. Shelton, 76 Va. 332.   (d)   The action of the Board of Aldermen in erroneously acting on the ordinance before the expiration of the full time allowed them, even though in conformity with a previous administrative construction of the charter, does not create an estoppel against the city, or its officials, in urging the invalidity of the submission of the ordinance, as is contended for by relator.   Folk v. St. Louis, 250 Mo. 140; Wright v. City of Doniphan, 169 Mo. 613.   And that the city cannot be estopped by any action of the committee of the signers of the initiative petition is so manifest that no citation of authority is needed.   (e)   Nor does the procedure followed in the courthouse site referendum work an estoppel against

respondents, for the reason that the provisions of Section 2 of Article VI of the charter, by which the said proposition was governed, are entirely dissimilar to those of Section 4 of Article V governing this case. See authorities, infra. (f) As Section 4 of Article V is mandatory in its entirety, no part of the time allowed the Board of Aldermen or the committee of petitioners may be waived by either of them, as is asserted by relator. Herman v. City of Oconto, 100 Wis. 398; Swindell v. State ex rel. Maxey, 143 Ind. 169; Horner v. Rowley, 51 Iowa, 621; McCoy v. Briant, 53 Cal. 247. (3) The ordinance contemplates or involves the payment of money. Bishop v. Lambert, 114 Mich. 110; Fournier v. Common Council, 94 Mich. 463; Tennant v. Crocker, 85 Mich. 328. (a) The ordinance being one contemplating or involving the payment of money, it is invalid by reason of having not been recommended by these respondents, constituting the Board of Estimate and Apportionment, as required by the charter. Article IV, sec. 25, Charter. (4) The power of the people to propose ordinances by the initiative, pursuant to Article V of the charter, is subject to the provisions of Section 25 of Article IV, requiring ordinances contemplating or involving the payment of money to be first recommended by the Board of Estimate and Apportionment. The limitation clause at the end of Section 1 of Article V, "subject to the provision of this charter," must be read in conjunction with Section 25 of Article IV. State ex rel. Lashly v. Becker, 290 Mo. 585. (5) The people, in the exercise of the initiative, only have the power to propose ordinances, and not to adopt or enact them by vote at the polls; consequently the ordinance is void. Charter, Art. V, sec. 1; Art. IV, secs. 1, 23; State ex rel. Lashley v. Becker, 290 Mo. 585. (6) The Board of Aldermen alone has the power to fix the salaries of city employees, such as firemen; therefore the ordinance is invalid. Art. VIII, sec. 7, Charter. (7) The ordinance does not come within the purview or intendment of the initiative provisions of the charter for the reason that neither the reasonableness of the salary fixed nor the ability of the city to pay, could be determined by the initiatory method of adoption. Only subjects of legislation to which the initiatory method is applicable may be submitted to the electors. Southwestern Tel. Co. v. City of Dallas, 134 S. W. 321. (8) The ordinance is unreasonable and oppressive and therefore void for the reason that it imposes a burden upon the city, in the way of increased salaries, which it cannot meet without increasing the tax rate of the city to a rate in excess of the limit fixed by Section 11 of Article X of the Constitution. Corrigan v. Gage, 68 Mo. 541; City of Cape Girardeau v. Riley, 72 Mo. 220.

ATWOOD, J.—Relator is a citizen, resident, taxpayer and voter of the city of St. Louis, Missouri, and is employed as a ladderman in

the Fire Department of said city, classed as a private, Class A. Respondents are the Mayor, Comptroller, and President of the Board of Aldermen, respectively, and as such constitute the Board of Estimate and Apportionment of said city. This is an original proceeding in mandamus whereby relator seeks to compel respondents to submit to the Board of Aldermen of the City of St. Louis a statement showing in the estimated requirement of the Fire Department of said city a salary of $180 per month for relator, and to submit to said Board of Aldermen a bill appropriating the amount deemed necessary for the use of the Fire Department of said city in which the salary of relator shall be fixed at $180 per month.

The material allegations of relator's petition, aside from the above, are that under its charter the Board of Aldermen of the City of St. Louis shall provide and maintain a fire department for said city; that by duly enacted ordinance said Board of Aldermen has provided for said fire department, the number and classification of officers and employers, the number of each classification and their duties, including the position and work of relator, and that the number of most of the employees in the various departments of said city is not fixed by law, but must be fixed by said Board of Estimate and Apportionment; that in Article V of said charter it is also provided that the people shall have power, at their option, to propose ordinances, and to adopt the same at the polls, with the same effect as if adopted by the Board of Aldermen and approved by the Mayor, such power to be known as the initiative and to be exercised subject to the provisions of the charter; that the proposal of ordinances shall be by petition and submitted to the voters at an election, and if a majority voting on the proposed ordinance vote in favor thereof it shall be an ordinance of the city, in effect ten days thereafter; that said article completely provides for the exercise of said initiative power, and contains nothing requiring the said Board of Estimate and Apportionment to recommend or join in recommending any ordinance adopted by the people under said initiative power; that at an election held on April 7, 1925, there was submitted to the qualified voters of said city an ordinance proposed by petition under the initiative power, providing, among other things, for the fixing of the salary of a private, Class A, in the Fire Department, at $180 per month, whereby relator's salary was increased $25 per month; that said ordinance was adopted by a majority of 87,933 of the electors voting, and was duly certified to the Register of said city by the Board of Election Commissioners as having been adopted; that the Board of Aldermen of the city were, at the time of the filing of relator's petition herein, in annual session pursuant to provisions of the charter of the city; that under the charter the Board of Estimate and Apportionment is required to submit to the Board of Aldermen,

at the beginning of its annual session, or as soon thereafter as possible, a statement showing the estimated receipts and requirements of each department, board or office of said city for the current fiscal year, and a bill appropriating the amounts deemed necessary therefor, and that the Board of Aldermen is required immediately to proceed to the consideration of said· bill with power to reduce the amount of any item in such appropriation bill, except amounts fixed for meeting any ordinance obligation, but with no power to increase such amounts or insert new items; that by Section 25 of Aritcle IV of the charter it is provided that no money shall be expended except in consequence of appropriations made by ordinance, and that no ordinance contemplating or involving the payment of any money shall be adopted unless the Board of Estimate and Apportionment shall have recommended or joined in recommending the same; that in the statement and appropriation bill which the Board of Estimate and Apportionment is engaged in preparing the salaries of all officials and employees and all other liabilities and expenses of said city have been estimated, fixed and appropriated for the number and the salaries and the full amounts provided in the charter and ordinances of said city, except the salaries of relator and other members of the Fire Department, which have been fixed and appropriated at $25 per month less than the amounts provided by the said initiative ordinance, the salary of relator being fixed and appropriated at $155 per month; that relator has demanded of the Board of Estimate and Apportionment that in its said statement and appropriation bill it estimate, fix and appropriate his salary at $180 per month as provided in said initiative ordinance, but that said· board refuses so to do, on the ground that the said initiative ordinance is void because said Board of Estimate and Apportionment has not recommended or joined in recommending the same as provided in Section 25 of Article IV of the charter, and because the estimated revenues of the city are not sufficient to pay all other estimated salaries, liabilities and expenses of the city in full unless the salary of relator and other members of the Fire Department is reduced by $25 per month; that it is the duty of the Board of Estimate and Apportionment to fix and appropriate the salary of ʻrelator at $180 per month; and that without the aid of the writ of mandamus relator has no remedy in the premises.

Upon service of our alternative writ respondents filed their return admitting most of the above allegations, and setting up as defensive matter that the estimated revenues of the city of St. Louis for the fiscal year beginning April 14, 1925, is $18,885,000; that to appropriate for the use of the several departments of the city an amount sufficient to pay the salaries of all the employees authorized by ordinances of the city, in addition to the amount fixed by

statute for the payment of principal and interest on the city's debt, would necessitate the appropriation of an amount far in excess of the city's estimated income for the current fiscal year; that in order to avoid the expenditure of an amount largely in excess of the estimated income, the Board of Estimate and Apportionment has found it necessary to appropriate to the various departments sums that are insufficient to pay the salaries of as many employees as the heads of said departments are authorized by law to appoint, and that the heads of the various departments have been formally requested to reduce the number of their employees to an extent that will bring their annual payroll within the amount appropriated; that before petitions for the enactment of the initiative ordinance were circulated the Board of Estimate and Apportionment had been requested to recommend to the Board of Aldermen an ordinance increasing the salary of relator and other members of the Fire Department $25 per month; that there was then pending before the General Assembly of the State a bill, since enacted into law, increasing by approximately $800,000 the amount which the city is required by law to appropriate annually for the maintenance of the Police Department; that the power of the city to levy taxes for local purposes is, by Section 11 of Article X of the Constitution of Missouri, limited to a rate not in excess of $1.35 on each $100 valuation; that the Board of Estimate and Apportionment refused to recommend said ordinance increasing the salaries of members of the Fire Department because the money to pay said proposed increase, together with other fixed charges and expenses of the city for the fiscal year commencing April 14, 1925, and subsequent years, is not available without increasing the city's tax rate to a rate in excess of that fixed by the Constitution; that said initiative ordinance is void because the Board of Estimate and Apportionment has not recommended the same as provided by Section 25 of Article IV of the charter; that the initiative petition was filed with the Board of Election Commissioners on February 18, 1925; that the proposed ordinance was certified to the Board of Aldermen on February 24, 1925; that on February 27, 1925, the Board of Aldermen adopted a resolution finally refusing to adopt the ordinance; that on March 6, 1925, the clerk of the Board of Aldermen reported in writing to said board that on February 29, 1925, a committee of the petitioners had filed with him a petition stating that they finally refused to state in writing, as provided by Article V of the charter, that there was no necessity for submitting the ordinance to the voters; that on March 2, 1925, the clerk of the Board of Aldermen certified to the Board of Election Commissioners the refusal of the Board of Aldermen to adopt said proposed ordinance and the refusal of the committee of petitioners to withdraw the same;

315 Mo.—4.

that on April 7, 1925, said proposal was submitted to the electors; that said proposed ordinance was not lawfully adopted in compliance with Section 4 of Article V of the charter in that the refusal of the Board of Aldermen to adopt the same was certified to the Board of Election Commissioners before the expiration of sixty days after said proposal was certified to the Board of Aldermen by the Board of Election Commissioners, and in that said petition was not permitted to remain with the Board of Aldermen fifteen days after the expiration of said sixty days. The return denies that it is the duty of the Board of Estimate and Apportionment to fix and appropriate the salary of relator at the rate of $180 per month, and prays that our alternative writ of mandamus be quashed.

Relator thereupon filed motion for judgment on the pleadings.

I. Respondents say that mandamus is not available because relator's petition does not show a clear legal right in that it does not allege "that he has any lawful right to remain in the employ of the city during the year next ensuing from the time at which the appropriation becomes effective." Respondents offer **Right to Writ: Continued Employment.** neither argument nor authority in support of this point. Section 3 of Article XVI of the Charter of the City of St. Louis, among other things, directs the Board of Estimate and Apportionment to "submit to the Board of Aldermen, at the beginning of its annual session or as soon thereafter as possible, a statement showing the estimated receipts and requirements of each department, board or office for the current fiscal year; . . . also, annually submit and recommend to the Board of Aldermen a bill appropriating the amounts deemed necessary for the use of each department, board and office for the current fiscal year, and a bill establishing the city tax rates for the current year; provided, that the appropriations for payment of salaries and compensation of officers and employees may, in the discretion of the Board of Estimate and Apportionment be embodied in a separate bill." The statement and bill here contemplated are estimates for the current fiscal year and necessarily prospective, but they are based on the facts at hand when these estimates are made. The power and responsibility of appropriating and paying out the money rest with the Board of Aldermen and not the Board of Estimate and Apportionment. The latter board cannot legislate, but the statement and bill it submits and recommends should reflect the facts then existing. If relator's employment should thereafter cease his pay would of course likewise cease, but his right to have such statement and appropriation bill submitted and recommended to the Board of Aldermen with his monthly salary correctly stated and computed therein does not depend upon his continuance in

the employ of the city during the year next ensuing from the time at which the appropriation becomes effective. This contention has no merit and it is ruled against respondents.

II. Respondents further say that the initiative ordinance is invalid because violation of Section 4 of Article V of the charter, in

**Initiative Petition: Premature Submission.**

that the final refusal of the Board of Aldermen to adopt the ordinance, and the final refusal of the petitioners' committee to state in writing that there was no necessity for submitting the ordinance to the voters, were certified to the Board of Election Commissioners before the expiration of sixty days after the sufficiency of the initiative petition proposing the ordinance had been certified to the Board of Aldermen by the Election Commissioners, and said ordinance was not permitted to remain with the Board of Aldermen for fifteen days after the expiration of said sixty days.

The part of above Section 4 relevant to this objection reads as follows: "If the board of election commissioners find that the petition, with supplements, if any, is sufficient, it shall forthwith certify that fact, together with a copy of the petition, omitting signatures, to the board of aldermen. Unless the proposed ordinance is, without amendment, adopted and approved by the mayor, or adopted, without amendment, over his veto, within sixty days after the regular meeting of the board of aldermen next after said certification, or unless four members of the committee of the petitioners shall, within fifteen days after the expiration of said sixty days, state in writing to the clerk of the board of aldermen that there is no necessity for submitting the proposed ordinance to the voters, said clerk shall forthwith certify the failure to adopt same to the board of election commissioners."

Respondents attempt to bring their contention within the general rule stated in Dillon on Municipal Corporations (5 Ed.) sec. 576, *"that all charter or statutory requirements as to the method* in which an ordinance shall be introduced, and the manner in which it shall be considered, are, when reasonably calculated to induce deliberation, mandatory in their nature and must be complied with." While Section 4, supra, clearly gives the Board of Aldermen and the mayor sixty days within which they may adopt and approve the proposed ordinance, and if no such affirmative action is taken fifteen additional days are given the petitioners' committee within which it may in effect withdraw the petition, and while the provision is mandatory in this respect and to the further extent that failure to adopt the proposed ordinance must forthwith be certified by the clerk of the Board of Aldermen to the Board of Election Commissioners, yet under its terms these bodies are within the time specified free to act

with haste or with deliberation or to take no action whatever. As far as their action is concerned this provision of the charter is permissive and nothing more. They may act as and when they choose within the time indicated. Such a provision is in sharp contrast to the mandatory terms of the statutes in Carpenter v. Yeadon Borough, 208 Pa. St. 396, and Herman v. City of Oconto, 100 Wis. 391, cited by respondents, which required ordinances to be published for a certain length of time before they became effective; and to the prohibitory words in Town of Danville v. Shelton, 76 Va. 325, where the charter provided that "no ordinance or resolution appropriating money exceeding the sum of $1000, imposing taxes, etc., shall be passed until after ten days from the introduction thereof." The same distinction runs through the other cases cited by respondents. Where the character and purpose of the charter provision is thus clearly permissive, without command or prohibition touching such action except that it be not later than the time specified, such provision is no more reasonably calculated to induce deliberation than to prevent delay and obtain quick action. In the course of initiative legislation such as this (none is involved in the authorities cited by respondents) prompt consideration and final action at this stage may be highly desirable. In the instant case there was a substantial saving in time, and certainly no harm resulted from this refusal to legislate except the cost, now long since incurred, of submitting the proposition to a general vote of the people, who also had the power to legislate. The charter framers evidently had this consideration in mind when they failed to speak in the mandatory and prohibitory terms employed in the cases cited by respondents, and the absence of such language clearly indicates a purpose to repose the right and choice of immediate as well as of deliberate action in those to whom the privilege of acting was extended. Such purpose and intent to induce prompt action in a proceeding of this character would, however, be entirely thwarted if the clerk of the Board of Aldermen, must, notwithstanding the prompt and final action of the board, sit idly by and not certify such action until the full time has expired. We hold that this charter provision does not come within the general rule above stated and the initiative ordinance is not open to the objection here raised.

III.   It is next urged by respondents that the initiative ordinance contemplates or involves the payment of money and is invalid because not recommended by the Board of Estimate and Apportionment. This latter contention is based upon Section 25 of Article IV of the city charter as follows: "Except as otherwise expressly provided in this charter, no money shall be expended except

**Prior Recommendation of Board.**

in consequence of appropriations made by ordinance, and no improvement involving any expenditure of money shall be ordered except by ordinance. No ordinance making, changing, or transferring an appropriation or contemplating or involving the payment of any money shall be adopted unless the Board of Estimate and Apportionment shall have recommended or joined in recommending the same."

In support of the contention that this ordinance contemplates or involves the payment of money respondents cite Fournier v. Common Council, 94 Mich. 463, and Bishop v. Lambert, 114 Mich. 110. In the first case the council of the City of West Bay adopted a resolution fixing the salary of the street commissioner at three dollars per day. The court said: "Strictly speaking, a resolution fixing a salary cannot be termed an act appropriating money, but it is, nevertheless, an act making an appropriation of the compensation so fixed obligatory." In the latter case a resolution was adopted by the Board of Aldermen of the City of Wyandotte employing a certain number of firemen at a salary of $40 per month, and the court said: "We think that this engagement of firemen at $40 a month was equivalent to an appropriation of money, as it sought to create an obligation which could only be met by the appropriation of money."

It will be noted that in the above cases the ordinance or resolution fixed the salary of a certain person or a certain number of persons, while the initiative ordinance here under consideration insofar as the same is relevant to relator's contention only fixes "the salary of a private, Class A, in the Fire Department." This ordinance as disclosed by the record does not fix the number of employees or obligate the city to employ any one. It only means that if any one is employed in that particular class his salary shall be $180 per month. It could not serve as an appropriation ordinance, nor be construed as equivalent to such, because it discloses no certain number of employees, and no definite amount of money could be appropriated or set aside thereunder. Furthermore, Section 3 of Article XVI of the charter clearly indicates that the appropriation bill to be submitted and recommended by the Board of Estimate and Apportionment to the Board of Aldermen is the ordinance or bill that contemplates and involves the payment of the salary here fixed, and no other bill or ordinance does. Article XVI, which deals exclusively with the Board of Estimate and Apportionment, indicates no power or duty on the part of this body to recommend any except appropriation ordinances. Above Section 25 of Article IV must be construed in the light of the charter powers of this board. Respondents' claim would make the legislative branch of the city government subservient to the will of the Board of Estimate and Apportionment in all matters even remotely looking to the expenditure of

money.  The charter gives this board no such power.  Its recommendation is required only in connection with appropriation bills or their equivalent.   Entertaining this view it becomes unnecessary for us to discuss any distinctions urged to exist between legislation through the board of aldermen and by initiative petition.   The initiative ordinance did not require the recommendation of the Board of Estimate and Apportionment and respondents' contention is denied.

IV.  Respondents further contend that while this particular ordinance could be proposed through the initiative it could not be adopted or enacted by vote at the polls.  Section 1 of Article IV of the charter provides that "the legislative power of the city shall, subject to the limitations of this charter, be vested in a board of aldermen."  Section 23 of Article IV provides that "the board of aldermen shall have power by ordinance not inconsistent with this charter to exercise all the powers of the city."  From these two provisions respondents argue that the people parted with all their power to legislate and conferred such power on the Board of Aldermen, citing State ex rel. Lashy v. Becker, 290 Mo. 560.  We do not so understand the charter or our ruling in the case cited.  The above provisions stand *in pari materia* with Section 1 of Article V of the same charter, which is as follows: "The people shall have power, at their option, to propose ordinances including ordinances proposing amendments to this charter, and to adopt the same at the polls, with the same effect as if adopted by the board of aldermen and approved by the mayor, such power being known as the initiative.  It shall be exercised as hereinafter provided, subject to the provisions of this charter."  Being a part of the same instrument and enacted at the same time all these provisions must be read together and if possible construed so each will be given force and effect.  [Hill v. St. Louis, 159 Mo. 159, l. c. 168.] Section 1 of Article IV, supra, purports to be "subject to the provisions of this charter," and hence it is to be given force and effect subject to said Section 1 of Article V.  Likewise, Section 23 of Article IV, supra, purports to confer power "not inconsistent with this charter," and it is to be given force and effect not inconsistent with said Section 1 of Article V.  These provisions of Article IV therefore confer legislative authority or power subject to and not inconsistent with the power reserved in Section 1 of Article V to propose ordinances, including amendments to the charter, and "adopt the same at the polls, with the same effect as if adopted by the board of aldermen and approved by the mayor, such power being known as the initiative."  The power to adopt is just as positively reserved as the power to propose, and to hold that the section

*Initiative Valid.*

is shorn of this positive reservation by the already qualified delegation of authority in Article IV would be to reason foolishly in a circle, and nullify the plain terms as well as the intent and purpose of the charter. State ex rel. Lashly v. Becker, 290 Mo. 560, dealt with an *amendment* to the Constitution, and the rule of construction there invoked peculiarly applies to amendments. The last sentence of Section 1 of Article V, supra, clearly relates to the manner in which the initiative is to exercised, and does not serve to curtail or limit the power. This point is also ruled against respondents.

The same course of reasoning leads us to an adverse ruling upon respondents' Points V, that the Board of Aldermen alone has the power to fix salaries, and VI, that the ordinance does not come within the intendment of the initiative. Southwestern Telegraph and Telephone Co. v. City of Dallas, 134 S. W. 321, cited under respondents' Point VI, was decided upon a charter provision and facts wholly unlike those in the case before us, and the decision is not in point.

V. Respondents finally say that this ordinance imposes a burden upon the city, in the way of increased salaries, which it cannot meet

**Excessive Tax.** without increasing the tax rate beyond the limit fixed by Section 11 of Article X of the Constitution, and the ordinance is therefore unreasonable, oppressive and void. Assuming for the determination of this point only that respondents have properly pleaded the fact that if the statement and appropriation bill required to be submitted by the Board of Estimate and Apportionment to the Board of Aldermen contain "the amounts deemed necessary for the use of each department, board and office for the current fiscal year," including salaries for the actual number of employees falling within the classification and upon the salary basis fixed by this ordinance, the tax rate for the current year will exceed the constitutional limit, we do not see how such fact renders this particular ordinance unreasonable, oppressive and void. In this respect the initiative ordinance is on no different footing from that of other ordinances upon which amounts are computed, all of which contribute to the sum total of the city's estimated requirements. Respondents do not make out the clear case requisite to authorize us to interfere on that ground. [Wagner v. St. Louis, 284 Mo. 410, l. c. 417.]

VI. In what has been said we are not to be understood as holding that the Board of Estimate and Apportionment can exercise no

**Discretion.** discretion in the discharge of its duties, or that courts may interfere with the reasonable exercise of such discretion. In their return respondents aver "that in order to avoid the expenditure during the current fiscal year of an amount of money

largely in excess of the city's estimated income, said Board of Estimate and Apportionment has found it necessary to appropriate to the various departments of the city government sums that are insufficient to pay the salaries of as many employees as the heads of said departments are authorized by law to appoint; that the heads of the various departments of the city government have been advised of the amounts appropriated for the payment of salaries in their respective departments, and have been formally requested to reduce the number of their employees to an extent that will bring their annual pay roll within the amount appropriated for their respective departments." However, in said return respondents further baldly admit "that in said appropriation bill the Board of Estimate and Apportionment has estimated, fixed and appropriated for the salary of the relator and other members of said fire department $25 per month less than the amount provided for by the said initiative ordinance (33935) and in particular has estimated, fixed and appropriated $155 per month as and for the salary of the relator, being the amount fixed by said ordinance (33146), and that unless otherwise commanded by this court so intends to estimate, fix and appropriate the same."

Had the Board of Estimate and Apportionment itself attempted to fix the salary of relator such action under the facts pleaded would clearly have been an arbitrary, unreasonable and unauthorized exercise of discretion subject to court review. However, respondents plead no proper exercise of discretion, and from the foregoing it is apparent that in making up their statement and appropriation bill they erroneously assume that initiative Ordinance No. 33935 is invalid and purpose to follow the repealed portions of Ordinance No. 33146.

For the reasons stated it is ordered that the alternative writ heretofore issued be made peremptory. All concur.