KANSAS CITY, a Missouri Municipal Corporation, WILLIAM E. KEMP, WALTER R. SCOTT, THOMAS A. GAVIN, ILUS W. DAVIS, JOSEPH M. NOLAN, ROBERT J. BENSON, HARRY S. DAVIS, REED O. GENTRY, and DON M. JACKSON, Respondents, v. LOUIS B. McGEE, WILL A. SESSIONS, HARRY B. KIES, NAT MILGRAM, EUGENE L. SELDERS, Appellants, No. 44317—269 S. W. (2d) 662.

Division Two, June 14, 1954

Motion for Rehearing or to Transfer to Banc Overruled, July 12, 1954.

*Jerome Walsh* and *Frederick E. Whitten* for appellants.

898

*David M. Proctor, John J. Cosgrove* and *Frank O. Knight* for respondents.

WESTHUES, C.—The City of Kansas City and the Mayor and members of the City Council filed this suit for a declaratory judgment against the defendants Louis B. McGee, Will A. Sessions, Harry

B. Kies, Nat Milgram, and Eugene L. Selders, as individuals and as members of a committee of petitioners who had filed a certain initiative petition proposing an ordinance creating a firemen's pension plan. The question sought to be adjudicated is whether the City Council was justified in refusing to submit the question of the enactment of the proposed ordinance to a vote of the people. The defendants filed a motion to dismiss plaintiffs' petition which was overruled; defendants refused to plead further and upon a motion for judgment on the pleadings, the trial court held that the proposed ordinance should not be submitted to a vote as proposed by the initiative petition. Defendants appealed.

A number of constitutional questions were presented to the trial court by plaintiffs' petition, one being that the proposed ordinance violated Sec. 51, Art. III of the 1945 Constitution of Missouri, in that it was an appropriation ordinance. The trial court so held. This court has appellate jurisdiction.

Defendants' only pleading in this case was a motion to dismiss the petition. After it was overruled and defendants refused to file any other pleading, a motion for ▇▇▇ judgment on the pleadings was filed and the trial court entered a judgment in accordance with plaintiffs' petition. In such circumstances the statement of facts contained in the petition must be considered as true.

Plaintiffs' petition discloses that the initiative petition was first filed with the City Clerk on August 17, 1953. On August 25, the Clerk certified to the City Council that the petition contained the proper number of names but that he doubted the legality of the ordinance proposed by the initiative petition. (Sec. 74.195, RSMo 1949, VAMS) The City Council proposed a substitute ordinance which was passed on October 23, 1953. The defendants were not satisfied with the ordinance passed by the Council and so advised the city authorities. The defendants insisted that the ordinance filed with the initiative petition be submitted to a vote of the electors. The city authorities refused. This suit was then filed to determine the respective rights and duties of the city authorities.

The defendants in their brief and in oral argument in this court requested that in case the judgment of the trial court be reversed, this court should fix a day for holding an election on the proposed ordinance. In the petition plaintiffs asked the court to determine "whether said City Council must submit such proposed ordinance to a vote of the people thereon * * * ." Plaintiffs and defendants have therefore invoked the jurisdiction of the court to enter a decree directing that an election be held on the proposed ordinance in case the issues be found in defendants' favor. Cases presenting questions of this nature have frequently been presented to this court. As a rule the remedy invoked has been either injunction or mandamus.

Defendants have briefed only two points. In the first they say: "The Circuit Court erred in finding and declaring the City Council was not

required to submit the proposed ordinance to a vote of the electors of Kansas City, because all of the constitutional questions raised against it, and found by the court to bar its submission, are substantive in character. Those questions cannot be considered' by the courts until adoption of the ordinance under attack.'' (Citing authorities)

In the second point, it is stated: ''The Circuit Court erred in finding and declaring that Article III, Section 51, of the Constitution, had application to a municipal ordinance, proposed by the initiative and designed solely to regulate a municipal function, under local charter provisions therefor, submitted for the adoption or rejection of the proposal, by the electors of a city organized under special charter.'' (Citing authorities)

We shall dispose of these questions in the order stated. Many authorities hold that courts cannot interfere with the process of legislation by the initiative except to determine whether the petition is in proper form and contains the required number of signatures. In other words, the inquiry must be limited to strictly procedural matters. In the case of State ex rel. Stokes v. Roach, Mo. Sup., 190 S.W. 277, this court en banc so stated the rule by a divided vote of four to three. It was held that courts have no power to examine the law proposed to be enacted by the initiative to determine its constitutionality; that such questions cannot be decided until the act has been adopted and become effective as a law. Cases from other states so holding are: Hamilton v. Deland, 227 Mich. 111, 198 N.W. 843; Horton v. Attorney General, 269 Mass. 503, 169 N.E. 552, l.c. 557 (14); Democrat Printing Co. v. Zimmerman, 245 Wis. 406, 14 N.W. (2d) 428; l.c. 430 (4, 5); State ex rel. Hamilton v. Cohn, 1 Wash. (2d) 54, 95 P. (2d) 38.

Defendants say that the settled policy on this question in this state is that the courts are limited to an examination of the procedural matters when called on to interfere in the legislative process of enacting laws by the initiative method. It is claimed that the law of this state as to this question was decided in the case of State ex rel. Halliburton v. Roach, 230 Mo. 408, 130 S.W. 689, 139 Am. St. Rep. 639. That rule there announced was later approved in Moore v. Brown, 350 Mo. 256, 165 S.W. (2d) 657, where this court en banc disapproved cases holding contrary to the rule stated in the Halliburton case, supra, and overruled the holding in the Stokes case, supra. We agree with the defendants that the settled rule in this state is as declared in the Halliburton and Moore cases. However, as we see it, the essential difference or conflict of the Stokes case with the other cases lies in what may be considered as procedural. In the Stokes case only the sufficiency of the petition itself was considered while in the Halliburton and Moore cases, the law proposed by the initiative petition was considered an essential part of the petition and therefore subject to examination by the courts. It was held that since the proposed law must be filed with the petition it becomes a part thereof. In the Moore case the only

so-called procedural defect the court found was that the proposed law was in conflict with four specific provisions of the constitution. The defect as pointed out, 165 S.W. (2d) l.c. 663 (10, 11), consisted in the fact that the proposed constitutional amendment filed with the petition would conflict with four specific constitutional provisions and that the proposed amendment made no reference to those conflicting provisions. In other words, the amendment proposed to be adopted should have expressly provided for the repeal or amendment of the conflicting provisions so that the signers of the initiative petition would understand the effect of the proposed law. It was held that the failure of the proposed act to refer expressly to the provisions of the constitution that the proposed act would amend or repeal was a procedural defect and in violation of Sec. 57, Art. IV of the 1875 Constitution, now Sec. 50 of Art. III, 1945 Constitution, which requires that the proposed law shall contain "the full text of the measure." The court there stated (165 S.W. (2d) l.c. 663): "Further, it obviously would be a fraud on the signers of an initiative petition to procure their signatures on the inducement that it proposes a constitutional amendment greatly in their interest, when in fact it makes other undisclosed changes greatly to their detriment."

Defendants also cited the case of State ex rel. Cranfill v. Smith, 330 Mo. 252, 48 S.W. (2d) 891, where the court en banc refused to issue its writ of mandamus to compel the submission of a proposed ordinance to the voters of Kansas City. Defendants criticized the opinion in that case as being out of line with the Halliburton and Moore cases, supra. It would serve no useful purpose to review the Smith case at length. The object of the ordinance proposed by the initiative petition in that case was to condemn the capital stock of the Public Service Company of Kansas City, Missouri. The court held that under the law capital stock could not be taken in a condemnation proceeding and hence the proposed ordinance was unconstitutional. The court held mandamus to be a discretionary writ and in that case would not be issued to compel a large expenditure of money to hold a useless election. The ruling in the case is sound law and supported by good authority. The principle there applied need not be invoked in this case. In deciding the present case, we shall follow the law as proclaimed in the Halliburton and Moore cases, supra.

It is conceded in this case that the initiative petition filed was in due form and contained a sufficient number of signatures. Plaintiffs, however, contend that the proposed ordinance is an appropriation ordinance and that Sec. 51 of the Constitution, supra, expressly prohibits such a law being enacted through the initiative process unless the proposed ordinance also provides new revenue to take care of the appropriation. The constitutional provision reads as follows: "The initiative shall not be used for the appropriation of money other than of new revenues created and provided for thereby,

or for any other purpose prohibited by this constitution. Except as provided in this constitution, any measure proposed shall take effect when approved by a majority of the votes cast thereon. When conflicting measures are approved at the same election the one receiving ▮ the largest affirmative vote shall prevail.''

If the proposed ordinance in this case is in fact an appropriation ordinance then it is fatally defective in that it fails to make any provision to raise the revenue to be appropriated as required by the above section of the constitution. The purpose of Sec. 51, supra, becomes apparent when we consider the duties and restrictions imposed upon the city authorities. Sec. 26(a) of Art. VI, 1945 Constitution, prohibits any city from becoming indebted in an amount exceeding in any year the income and revenue provided for such year. It would be difficult for a city council to comply with that constitutional provision and the budget law if appropriations could be made by the initiative process. The people, therefore, by the constitution expressly prohibited an appropriation law being voted through the initiative unless the law at the same time provides the revenue.

The proposed ordinance, if adopted, would take from the City Council the control over the finances of the City. Sec. 89 of Art. IV of the City Charter of Kansas City empowers the City Council to ''review the budget to determine the need for the expenditures requested and the adequacy, reliability and propriety of estimated revenues, including hearings with the city manager and department officials.'' That section also provides that the Council may increase or decrease the amounts or eliminate any appropriation as requested. The proposed ordinance would materially affect, and we may add disrupt, the plan of making out a budget as provided for in the Charter of the City. The proposed ordinance would substantially change the budget law. No mention was made of this material change in the law in the proposed ordinance.

The Moore case, supra, held the proposed law there in question to be defective because it failed, as the constitution required, to specify that certain provisions of the constitution were to be amended. So, in this case, the proposed ordinance failed, as the constitution required, to provide the new revenue. The proposed ordinance also failed to mention the budget law which would be materially altered by its adoption. The ruling in the Moore case, supra, is applicable to this case. It was there held that such a defect constituted a procedural deficiency.

The question remains, can the proposed ordinance be classified as an appropriation law? This question must be answered in the affirmative. The trial court made the following finding as to this question: ''(h) Said proposed initiative ordinance is in violation of Article III Section 51 of the Constitution of the State of Missouri, in that said proposed ordinance is, in effect, an appropriation ordinance but does

not create nor provide for any revenues, and attempts to use the initiative for the appropriation of money not created nor provided for by said proposed ordinance, and in attempting so to do said proposed ordinance is not a lawful subject for the exercise of the power of initiative under the provisions of said article and section of the State Constitution.''

Plaintiffs' petition charged that the initial payment the proposed ordinance would require the City to pay would be about $4,000,000 and that the City would be required to pay annually about $550,000. Defendants in their brief question these amounts. That, however, is immaterial. The ordinance by its terms places the entire control of the administration of the pension fund in the hands of the trustees. The only duty delegated to the City Council is a ministerial duty to make appropriations whenever it is requested to do so. Note the provision of the ordinance: ''On recommendation of the trustees the city council shall from time to time appropriate additional contributions by the City to provide actuarial reserves for future liabilities and for deficiencies in the current requirements and reserves of the pension fund.'' The trustees fix the amount and the Council *shall* appropriate the amount requested. We are not saying that the framework of the ordinance as to the administration of the pension fund is not in accordance with the law. What we do ▮▮▮ hold is that Sec. 51 of the Constitution, supra, requires that if such a law is to be enacted through the initiative it can only be done by making provision for *new* revenue to pay the bill. The proposed ordinance is fatally defective in this respect. It is true that the proposed ordinance does not in and of itself appropriate the money to carry out the pension plan but it does not leave any discretion to the City Council. The ordinance says the Council shall appropriate the amount asked for by the trustees administering the pension plan. The ordinance has the same effect as if it read that a sum necessary to carry out its provisions as certified by the trustees shall stand appropriated and be subject to warrants drawn against the fund by the treasurer of the pension fund. Any other interpretation would permit a violation of the plain mandate of Sec. 51 of the Constitution, supra.

We see no merit in defendants' argument that Sec. 51 has no application to municipal ordinances. In the case of City of Springfield v. Clouse, 356 Mo. 1239, 206 S.W. (2d) 539, l.c. 545 (7), in speaking of constitutional provisions, the court en banc said, ''These same governmental principles and constitutional provisions apply also to municipalities because their legislative bodies exercise part of the legislative power of the state.'' Legislative acts or special charters may authorize enactment of city ordinances by initiative. However, such authorization carries with it constitutional restrictions imposed on the authority granted.

The judgment of the trial court must be and is hereby affirmed. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court.

*Leedy,* Acting P.J., and *Anderson* and *Broaddus,* Special Judges, concur.